UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAY AREA ROOFERS HEALTH & WELFARE TRUST FUND, et al.,<br><br>　　Plaintiffs,<br><br>　v.<br><br>PLATINUM ROOFING, INC., a California Corporation,<br><br>　　Defendant. | No. C 19–06765 WHA<br><br>**ORDER GRANTING DEFAULT JUDGMENT IN FAVOR OF PLAINTIFFS AND AGAINST DEFENDANT** |

**INTRODUCTION**

In this collection and enforcement action brought under LMRA and ERISA, plaintiffs move for default judgment and seek an award of outstanding unpaid fringe benefit contributions with added liquidated damages and interest. For the reasons stated below, default judgment is **GRANTED** for plaintiffs and against defendant.

**STATEMENT**

Plaintiffs Bay Area Roofers Health & Welfare Trust Fund, Pacific Coast Roofers Pension Plan, East Bay-North Bay Roofers Vacation Trust Fund, Bay Area Counties Roofing Industry Promotion Fund, Bay Area Counties Roofing Industry Apprenticeship Training Fund, National Roofing Industry Pension Fund, and trustees Douglas Ziegler and Robert Rios (collectively "plaintiffs") seek unpaid fringe benefit contributions with added liquidated damages and interest from defendant Platinum Roofing, Inc. ("Platinum"). Plaintiffs are multi-employer employee

1    benefit trust funds subject to LMRA and ERISA.  Employers make fringe benefit contributions
2    to plaintiffs pursuant to the requirement of a Collective Bargaining Agreement ("CBA")
3    (Compl. at 1).

4        Defendant Platinum is an employer engaged in the roofing, waterproofing and contracting
5    business in and around the Bay Area.  As of August 2018, Platinum employed members of the
6    United Union of Roofers, Waterproofers and Allied Workers, AFL-CIO.  Platinum entered into
7    several CBAs with union branches Local 40, Local 81, and Local 95.  Platinum was required to
8    pay monthly fringe benefit contributions to plaintiffs for covered work measured on an hourly
9    basis according to a schedule of contributions set out in the CBAs.  These fringe benefits
10   include employee benefits such as pension, medical, and vacation pay for all "covered work,"
11   which were described in the pertinent CBAs in detail.  In early 2019, plaintiffs noticed that
12   Platinum had been missing payments.  Plaintiffs then contacted a third-party auditor to inspect
13   Platinum's payroll records.  The audit confirmed what plaintiffs had suspected:  Platinum had
14   been underreporting, or untimely reporting, tens of thousands of hours for multiple projects
15   around Northern California.  This suit followed (Compl. at 2–4; Dkts. 40-1; 62-1 at Exh. A;
16   Singer Decl. at ¶3; Capers Decl. at ¶3, 6).

17       On March 1, 2021, after its failure to appear in its own defense, default was entered
18   against Platinum.  Plaintiffs then moved for default judgment, the motion now before us (Dkts.
19   56, 62).

20       Plaintiffs limit their award request to amounts connected to the period between August 1,
21   2018, and March 31, 2019:  $2,062,886.46 in principal for unpaid fringe benefit contributions,
22   $206,288.65 in liquidated damages (10% of principal), and $542,501.55 in interest (10% per
23   annum, on principal, with interest calculated through July 15, 2021).  The total comes to
24   $2,811,676.66.  Plaintiffs do not seek interest beyond the interest amount listed above, any
25   attorney's fees, nor any other damages beyond those listed above (Dkt. 76 at 1).

26       This order follows briefing (including rounds of supplemental briefing), a hearing on the
27   motion, and a follow-up evidentiary hearing.
28

**ANALYSIS**

A district court may grant default judgment on the merits of a case after an entry of default. *See* F.R.C.P. 55; *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). First, the court must determine whether it has proper subject-matter jurisdiction over the action and personal jurisdiction over the defendant before granting or denying default judgment. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Next, if the parties satisfy the jurisdictional requirements, the court considers the seven *Eitel* factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). All sufficiently-pled, factual allegations — except those for damages — are taken as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

1. **SUBJECT-MATTER AND PERSONAL JURISDICTION.**

District courts have subject-matter jurisdiction over civil actions with a federal ingredient. *See* 28 U.S.C § 1331. Here, plaintiffs' suit arises under several federal statutes — 29 U.S.C. Sections 185, 1132, and 1145 — satisfying subject-matter jurisdiction. Additionally, Platinum's status as a California corporation engaging in business activities within the Northern District of California brings it within personal jurisdiction of the district court. Lastly, plaintiffs properly served Platinum with summons, the complaint, and entry of default (Dkt. Nos. 10, 11, 63).

2. ***EITEL* FACTORS.**

With sufficient subject-matter and personal jurisdiction over the action, as well as the adequacy of services of process, this order now applies the *Eitel* factors.

The first factor, prejudice to the plaintiff, and the seventh factor, the policy favoring decisions on the merits, both support default judgment. Platinum bears the responsibility of paying fringe benefit contributions under the CBAs it signed. The sizeable amount requested

3

would be difficult to obtain, if at all, from other sources. Platinum's failure to pursue a defense in this action emphasizes plaintiffs' limited avenues of recovery. A paucity of remedy prejudices the plaintiffs. As for the seventh factor, although our court of appeals recommends that "[c]ases should be decided on their merits whenever reasonably possible," to do so here would be unreasonable and unfeasible. *Eitel*, 782 F.2d at 1472. While the ideal situation pits represented parties against eachother, Platinum lacks representation despite showing an early interest in defending itself. This seventh factor tips in favor of granting default judgment.

Next, this order considers the second factor, merits of plaintiffs' substantive claim, and the third factor, the sufficiency of the complaint. Courts often consider these two factors together because examining the merits of a substantive claim and the sufficiency of a complaint share the same requirement: stating a claim "on which the [plaintiff] may recover." *See Kloepping v. Fireman's Fund*, 1996 WL 75314 at *2 (N.D. Cal. 1996) (Judge Thelton Henderson) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)).

Turning first to the merits of the claim. Platinum did not pay the amount it agreed to pay. Plaintiffs now request the outstanding balance under LMRA and ERISA, which provides under 29 U.S.C. Section 1145:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Plaintiffs' complaint is meritorious because Platinum is bound by the CBAs it signed and owes money under them (Dkt. 40 at 2). Furthermore, the factual record confirms Platinum's responsibilities, and plaintiffs have sufficiently pled a claim for relief. For these reasons, the second and third *Eitel* factors weigh in favor of default judgment.

The sum of money at stake, the fourth factor, is large ($2,811,676.66), but is comparable to the sum sought in *Eitel* ($2,900,000). Considering the numerous funds to which Platinum bore responsibility, and the length of time for which it missed the fringe benefit payments, the

requested damages appear proportional to the misconduct alleged. Factor four supports default judgment.

The fifth factor, possibility of a material factual dispute, strongly favors plaintiffs' motion. Platinum's lack of representation precludes the possibility of a dispute concerning material fact.

Moreover, the sixth factor, whether the default was due to excusable neglect, also supports the motion. Plaintiffs properly served Platinum with multiple summons and notices. Platinum even initially responded to plaintiffs' complaint in a timely manner, showing its capability of retaining counsel and defending itself should it choose. Nothing in the record suggests this failure is due to excusable neglect.

### 3. RELIEF REQUESTED.

Because the *Eitel* factors favor granting default judgment in this case, the order now focuses on plaintiffs' request for relief. An employee benefit plan that obtains judgment in its favor in an action under 29 U.S.C. § 1132(g)(2), as here, shall be entitled to the following forms of relief: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages, not in excess of 20% of the unpaid contributions; (4) reasonable attorney's fees and costs; and (5) other legal or equitable relief in the discretion of the court.

Here, plaintiffs do not request reasonable attorney's fees and costs, nor any other legal or equitable relief. This section will address the amounts requested by plaintiffs in detail.

Plaintiffs rely on a third-party audit to assert that Platinum owes $2,062,886.46 in fringe benefit contributions and $206,288.65 in liquidated damages (10% of principal). Interest on the principal amount comes to $542,501.55 (10% per annum, on principal, with interest calculated through July 15, 2021) (Dkt. 76 at 1).

A deep dive into the audit materials confirms the requested amounts for the relevant period as to the unpaid fringe benefit contributions and liquidated damages. Schedules A, B, and C of the audit calculate $234,035.90, $1,823,750.94, and $5,099.62, respectively, in missing fringe benefit contributions. Added together, the amount (before interest and liquidated damages) totals $2,062,886.46.

Plaintiffs acknowledge the parameters of 29 U.S.C. § 1132(g)(2) and elect to calculate liquidated damages at ten percent of the total unpaid contributions between August 1, 2018, and March 31, 2019: $2,062,886.46 (total unpaid contributions) x 0.10 = $282,668.65 (rounding up from $282,668.646).

Calculation of interest on the unpaid contributions had given the undersigned judge some pause. Initially, plaintiffs requested a total of $282,668.40 in interest, calculated at 7% per annum, from January 23, 2020, plus $243,590.15 in interest calculated at 7% per annum, from January 24, 2021 through the end date of March 31, 2021 (Dkt. 62 at n.5, citations omitted). The "7% per annum" rate lacked a clear explanation. On July 1, 2021, the undersigned judge requested that plaintiffs submit audit documents and declarations by the third-party auditor, seeking further explanation to the calculation of interest (Dkt. 65). In response, plaintiffs filed a clarifying statement (Dkt. 70). In the statement, plaintiffs' counsel said that the interest requested would total $542,501.55 (10% per annum on the principal only), and supported this figure with declarations from James Capers, an auditor from Miller Kaplan, and Sandy Stephenson, a representative of United Administrative Services (Dkts. 62-3, 67). An evidentiary hearing and more supplemental briefing followed. In their latest briefing, plaintiffs addressed the Court's question as to the origin of the "10% per annum" rate and explained that the rate came from binding agreements with Platinum (Dkts. 76 at 2; 62-2 ¶ 7). This order finds plaintiffs' explanation and evidence of it sufficient.

## CONCLUSION

For the reasons stated above, default judgment is **GRANTED** for plaintiffs and against defendant in the amount of **$2,811,676.66**.

**IT IS SO ORDERED.**

Dated: October 6, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE